Yes, good morning, Your Honors. Kenneth Caruso. I've been appointed by the court under the CJA to represent Ms. Brown, the appellant here. I will begin with what is undisputed. First, the law applicable here is undisputed. It required the government to prove beyond a reasonable doubt that Brown knew when she drove the car that a bank, as distinct from some other place, would be or had been robbed. And it is insufficient for the government to introduce evidence that points equally or nearly equally to knowledge of a robbery of a bank or of a gas station or of a residence. Now, the facts also sticking with the undisputed. Brown drove a car, a boyfriend to the right of her, his friend in the back. They stopped at a gas station. Brown went in, made a purchase, exited and pumped the gas. They drove on. They drove into a residential neighborhood and Brown parked the car in the residential neighborhood. It is undisputed, and this bears emphasis, it is undisputed that Brown could not see the bank from her parked vantage point. The two men exited the car wearing all black. They walked away from the bank and deeper into the residential neighborhood and out of Brown's sight. Brown then telephoned her sister in Florida and had a conversation that lasted nearly 10 minutes. The men ran back to the car, emerging from the side yard of another residence, got in the car carrying cash. Brown drove away. The men changed clothes. Now, from that evidence, can a jury draw an inference of guilt beyond a reasonable doubt? The answer, I suggest, is no, because the evidence points equally to knowledge of the robbery of a residence, a robbery of a gas station, or a robbery of a bank. Mr. Caruso, my understanding of the record is that the only crime that was discussed was a bank under discussion by the parties to rob a convenience store or rob a friend drug dealer, what have you. She was in contact with them. She was very close. I mean, it was her boyfriend who was the lead. She spoke with Mr. Young as well. They drove past the bank. I mean, what is there to suggest that there was any other possibility but robbing the bank that she just drove by come around to the neighborhood to park within a minute's run of, and then when they ran to her carrying cash bundles in front of them, what is there to suggest was anything other than the bank robbery that the district court charged the jury to consider, that there was anything other than that at issue? Well, let me start by stating, Your Honor, that there is absolutely no evidence that the parties discussed a bank robbery. There is no evidence that Brown engaged in any conversations that addressed specifically a bank robbery, none. The phone call, the content of the phone calls is unknown. This case is entirely- But you concede in your brief that you could infer from the frequency of the phone calls or the phone calls that occurred before the robbery that they were discussing plans for the robbery, but then you say that these calls were about the robbery of what? And you say it might have been the convenience store, it might have been a residence, but if it's evidence that they were discussing plans for the robbery in advance, isn't the robbery the robbery that actually happened, which is the robbery of the bank? Why would they be talking about the robbery of the convenience store if no one ever planned to rob a convenience store? Well, how do we know no one ever planned to rob a convenience store? We don't. The circumstances point equally to three targets of a robbery. And in fact, Brown saw these men leave her car and walk into a residential neighborhood, and then saw them emerge from the side yard of a residence. I suggest- If the only information that Brown had was whatever she gathered from sitting in the car, assuming that she was totally ignorant of what she was doing there, how she got there, and so on, maybe that's right. But if we have evidence that they discussed plans in advance, why isn't the natural inference from that that they discussed plans about the thing they were planning to do, which is to rob a bank? Because you don't have any evidence in the record, Your Honor, of a discussion of a plan to rob a bank. There is no- Wasn't there any discussion of the evidence of a plan to rob a convenience store? No, there's no discussion of any evidence. There's no evidence of any discussion of a robbery of any place. That's why each of the three is equally plausible. There is no evidence that Brown discussed anything. The evidence is entirely circumstantial. It might be different if one of the actual robbers had cooperated with the government and taken the stand and said, yes, we told her specifically we were going to rob a bank. Fine. I'd have no argument about sufficiency because the jury could have believed that. But there is absolutely no evidence that Brown discussed anything. And therefore, the case is entirely circumstantial. And I suggest to you that the circumstances indicate the equal possibility or plausibility of three targets of a robbery. And in fact, I think the most plausible is the robbery of a resident. Because look at what she saw. She saw these men walk into a residential neighborhood, and then she saw them emerge from the side yard of a resident. And what did she not see? She never saw the bank. She could not have seen these men. That's not quite accurate, right? Because she drove up South Torre Avenue, whatever, and took a left on the street where the bank and the bank parking lot were located. They drove past the bank that they eventually robbed. Yes. What I meant to say was from where she was parked, she could not see the bank and she could not have seen them exit the bank. They did drive past the bank, but they also drove past many residences and this convenience store and probably a few restaurants and lots of other places. So just driving past somewhere is not an absolutely no basis to infer that that gave her knowledge of that particular. Well, unless unless she's driving in a circle around the bank, I mean, they go from the front of the bank, past it, around the block to position themselves in the residential area on the other side of the block from the bank. So could a jury either circling the bank and positioning themselves an appropriate distance from the bank in order to effectuate a robbery? Well, okay, but they drove. That equally can be argued about the convenience store. Absolutely the same argument can be made about the convenience store. They drove around the block so that they robbers could actually run back to the car. The same thing can be said about every residence on that every residence on that street. The problem here for the government is that the inferences allow the jury. The evidence was sufficient to allow the jury to draw an inference of knowledge, but knowledge of what? There's no basis for drawing the inference of knowledge of a robbery at the government. But when she came, when the two robbers approached the car, one was carrying bundled up cash that, as I understand it, was not in a bag at that point. Yes, that is true, but that could have come from anywhere. I mean, there's no reason to gas station. Even bundles of cash that are wrapped with paper straps? Yes, absolutely. There's nothing on this. There's one bundle that, of course, I have to assume, taking the evidence in the light most favorable to the government, I have to assume that this bundle flashed by Ms. Brown's eyes in a split second while it transferred from Mr. Paris's hand to the bag. But the strap around it says $2,000. It doesn't say anything about a bank. So, you know, I mean, a money launderer can have a strap, a wad of cash with a strap around it that says $2,000. That could have come from a house that they robbed. That could have come from the gas station. Now contrast that with another bundle that was found in the snow and the government does not even contend Brown saw. That had a strap around it that said, quote, Key Bank Branch 0044732, Government Exhibit 17. My argument is a variant here on the expressio unius. If one contained a strap that mentioned the bank and the other didn't, that says a lot about the lack of knowledge of my client. The problem here for the government is that every single argument they make about infants that could be drawn is equally applicable to all three targets. Okay, Mr. Caruso, I believe your time has expired. You have three minutes of rebuttal. We'll hear from the government. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the court. My name is Emily Dininger, and I'm an assistant United States attorney for the Southern District of New York. I represent the government on this appeal, as I did during the trial below. The jury's verdict here was sufficiently supported by the government's evidence and further bolstered by Brown's own admissions and incredible denial. A reasonable juror could have easily inferred that Brown knew she was participating in a bank robbery based on the evidence that she was caught minutes after the robbery, driving the getaway car and openly surrounded by the classic trappings of a bank trap. So let me ask you about that for a minute. I noticed that phrase in your brief also, the classic trappings of a bank robbery, which seemed to me to be the black pants and black hoodie and, you know, robber-looking material. But a robber of a convenience store would use the very same things. I'm not really sure, you know, as well as retrieving cash, it's bundled like that. But, you know, the money that has been just withdrawn from the bank also and put in a safe deposit box or a vault could also bear the same appearance. What is it about that that was so distinctive of a bank robbery as opposed to any other kind? Yes, Your Honor. The classic trappings here are not limited just to the gun and the black mask and black clothing, which they used to disguise their appearance, but also the cash itself. And I want the record to be clear here. Defense counsel has suggested that there's only evidence in the record that one bundle was wrapped with a bank strap that said it came from Key Bank. But that's actually not correct. I was trial counsel below and I can represent to the court that the full quantity of the cash that was recovered from the car was admitted into evidence as Government Exhibit 3 and that that cash was in the same condition as it had been found in the car, that the majority of it was wrapped in bank straps of different colors indicating quantity. But I thought it was put, this is Judge Carney, I thought it was put in a bag. It was found in a bag in the car. There was evidence, however, that the robbers had run, Paris specifically, had run to the car carrying it in his hands and so must have placed the cash into the bag when he reached the car. And that evidence included civilian witness testimony that she saw him running with it in his hands. And also the cash dropped along the route between the bank and the car, indicating that the cash had not been fully secured at the time that they were running. But once again, this happened very, very fast. And she started the car and they took off as soon as they had, you know, pulled off their hoodie and thrown the cash in the car. What does it really suggest that she knew that was coming from a bank as opposed to any other place that had some wads of cash? Well, I think that the bank straps again, also, these straps for the bundles of a larger domination had stamps on them that indicated they were from Key Bank. There's also ample evidence supporting an inference that Brown knew of the bank robbery plan in advance. Those included her communication... What evidence is that? What is that evidence? That she knew the plan in advance. That evidence... It seems pretty clear that she knew... Well, to circle back to the question Judge Carney asked you initially, it seems clear that they were planning to rob some place. What evidence do you have that before the robbery actually took place, she knew they were robbing a bank? I think there's two things specifically that I would draw your attention to. The first is that the government, sorry, the blatant actions of Paris and Young made clear that they did have a plan to rob that bank, not some other target. And specifically, the videos that were admitted into evidence show that... Well, obviously, they were planning to rob the bank and they, in fact, robbed the bank, but that's besides the point. Because I think the government's position would be that if their specific plan was to always to rob the bank and not some other target, that there is more than ample evidence supporting an inference that Brown was part and knew in advance of the bank robbery. Because there's evidence that Brown was discussing plans with them, right? There was discussed that Brown spoke on the phone with Young, which is the first time she'd ever done so and hosted them at her house and those kinds of things, right? That's correct. And it's their plan... Now, the other side says that that leads equally to inference that they might have been planning a convenience store or robbing a bank. But if the evidence shows that they always plan to rob a bank, then isn't the national inference that talked about the specific plan that they had? Yes, I think that is exactly what the government's position would be. Is there any evidence of what the substance of these conversations was? No, there's no evidence as to what the substance of the conversation... So then you're speculating... Please correct me if I'm wrong, but it sounds as though you're speculating that the discussions, the substance of which we do not know, the government didn't prove up, involved the bank. Is that right? Well, again, there is evidence that the specific plan of Harris and Young was to rob the bank. Based on their conduct within the bank and the fact that the place where they chose to leave the getaway car had strategic advantages specifically to the bank as opposed to any other location. That begs the question, of course, those two guys were planning to rob a bank. But the issue is what is the proof beyond a reasonable doubt that she knew that they were going to rob a bank? I think the jury can reasonably infer from the fact that they had a plan to bank the bank and the extensive evidence that she was involved in whatever the plan was in advance, that she knew what the target of that robbery was going to be. There she do have evidence. Could you then move on to address DeStefano, where there was evidence that the individual who we found, whose condition we found was supported by insufficient evidence, had actually cased the bank with two people who ultimately, or on behalf of two people who ultimately robbed it and advised that the cameras were positioned as they had been before at some time and that guards were in places they had been before? Yes, I believe that DeStefano, although obviously it involved a bank robbery, the facts in DeStefano otherwise really aren't all that similar. There was no evidence in that case the defendant knew there was going to be a robbery of any type, period. In fact, the cooperating witness's testimony in that case was that they purposely never talked to the defendant about the fact that they had a robbery plan after coming up with it the very morning of the robbery and that she was not there at the time of the actual robbery. Of course, you don't have to be there in order to participate. I mean, that could have been a material advantage to them to have the information they gave her about how things were positioned in the bank. The fact that she was described as casing the bank suggests that she did know what the plan was. Well, I think the court, my understanding is the court in that case actually found that there was no evidence she knew she was casing the bank because they had not told her what the plan of the robbery was. And while you don't have to be there to aid and abet a bank, I think it is significant that here Brown was in a location where she could not have been just by happenstance and the evidence of the communications in the days leading up to the robbery. Again, in contrast to the Stefano where they said they specifically did not talk to her about the plan, there is ample evidence that here they very likely were discussing those plans during their communication. Can I ask about another piece of evidence? So we have this evidence that was used to impeach Brown, that she had overheard Paris and Young talking about robbing a bank, but she thought they were joking. And I guess I have two questions. One is, why didn't the government introduce that evidence in its affirmative case? And since it didn't, so what extent does the jury intend to rely on that evidence? During pretrial proceedings, the defendant filed a motion to suppress or raise a potential Miranda issue. Rather than contest that issue, the government represented that it would not use the defendant's admissions in its case in chief and did not. But the evidence- The district court actually ruled that it wasn't coerced, right? The district court ruled on that. The district court ruled that all of the tickets were voluntary and therefore could be used to impeach the defendant. Oh, the ruling was premised on the idea that it was only to be used to impeach the defendant, because if it's coerced, it can't be used to impeach either. So, right, it would have been admissible for all purposes. The district court only addressed whether it was voluntary and whether it could be used for impeachment purposes. Okay, so you only introduced this for impeachment purposes. So then we have her lying about not having heard this discussion before, but you don't introduce this evidence in your affirmative case. So what kind of inferences the jury entitled to draw from that evidence? Well, I think you have inconsistent statements, obviously, about whether or not she heard them talking about robbing a bank. And while that isn't direct evidence that she did hear them talk about a bank, I think the jury is entitled to take into account the fact that her statements are inconsistent, weigh that in finding that her general testimony is not credible, and specifically that her denial that she ever knew about a bank robbery is not credible. I think that your time is expired, unless one of my colleagues has another question. Go ahead. Just, I have one just peripheral question. Was either the counsel conviction, did either carry a minimum mandatory? No, Your Honor, neither of the counts that Brown was convicted ever carried a mandatory minimum. Paris and Young were charged in 924C counts, but Brown was not. So I have, sorry, go ahead. They get three years for robbing the bank and she gets 10. Just, that just seemed a little unusual to me. How did that come about? I'm sorry, Your Honor, she was sentenced to three years imprisonment. And the two men, I believe, both received sentences of eight years imprisonment. Oh, okay. I'm sorry I had that wrong. So I have one additional question, which is, if Brown were willfully blind to the target of the robbery, that is, let's say she knew a robbery was happening, but on purpose did not inquire and did not seek to know what the target was, would that satisfy the knowledge requirement? I don't think the jury was instructed on that, or was it? No, the jury wasn't instructed on that because that really wasn't the evidence in the case. And as I said, her theory here was not that she attempted not to find out whether there was a bank robbery or what the target was, but just that she never had any idea what the plan was or that there was going to be a bank robbery. Very good. I think that concludes your time. Mr. Caruso has three minutes of rebuttal. Yes, thank you, Your Honor. Let me start where the government finished, which is the jury was entitled to take into account that Brown was lying. They didn't believe her. But we have to clarify the law on that because the government statement is just a bit too offhand. This evidence, the impeachment evidence, as Judge Minasci elicited, was offered only on credibility. The government made a tactical decision that they didn't want to fight the motion to suppress and therefore could only use Brown's post-arrest statements to impeach her. Fine. This stuck with the consequences of that tactical decision, which means that evidence was only admissible to impeach credibility. And as I've stated and quoted in my brief, if on appeal the defense attacks the legal sufficiency of the evidence to support the witness, the jury simply disregards the testimony. Well, the lack of credibility could bolster evidence that's already in the record. So if we have evidence already in the record suggesting that she talked about the plans for the robbery with Paris and Young in advance, and then the jury sees her lying on the sand, claiming that she never had a conversation about those plans in inference that she did in fact talk to them. Yes, but that's a big if. Your Honor said if there was evidence that she knew about the plan, then her lying could be treated by the jury as additional evidence. I go back to what you said a moment ago, which is, you know, that having the communications with Paris and Young in advance suggested they were talking about their plan, but maybe the plan was to rob something else like a convenience store or whatever. But if she's on the stand, and we know that she's not credible because she's lying when she says she never heard them talk about a bank robbery, doesn't that bolster the inference that when she was talking to them about their plans, it was about the robbery that happened, which was the bank robbery? No, it doesn't, because there's insufficient evidence that she had any knowledge of the robbery or that a bank was to be robbed or had been robbed. The cases of this evidence supplement other affirmative evidence. And here there's no other affirmative evidence. You know, as Judge Calabrese put it, zero plus zero plus zero is still zero. If all the evidence is in equipoise, then as a matter of law, it stands in equipoise and there has to be an acquittal. And the credibility, negative inference from a lack of credibility doesn't add to that. Otherwise, a reviewing court could never hold the evidence insufficient in any case in which a defendant testified. If the defendant took the stand, the evidence would invariably be sufficient, because the court of appeals can always say, well, the government, the jury didn't believe the defendant. And we know that's not the law. So there has to be some affirmative evidence to which the lack of credibility supplements. And you simply don't have that here. Now, just let me turn to a couple of the other points here. Judge Carney mentioned DiStefano. I suggest to the court that this case requires reversal, a fortiori, from DiStefano. In DiStefano, the defendant went into the bank and cased it for the robbery. In this case, Brown never went into the bank. She didn't even see the bank from where she was parked. If she cased anything, she cased the gas station that she entered. So I suggest to you that DiStefano requires reversal. There is absolutely no evidence of the substance of these conversations. There is no basis in the record for the jury to have concluded, to have inferred that she knew that the bank was the target, because there's no evidence of the substance of the conversations. Ms. Dininger, I think, made a slip of the tongue there, where she said it's very likely that they discussed the bank robbery. But that's not enough. We don't put people in prison because the evidence is very likely. They have not proven their case beyond a reasonable doubt. Now, if I may just scan my... Mr. Crusoe, I think you have about 30 seconds left. Yes, just let me scan my notes. Right, this whole bank strap issue, I'm going to make two points here. One, it's a total afterthought. This bank straps point wasn't even argued in front of the jury. The government didn't argue in front of the jury. And now we've got what I have to call with apologies. I've been fanned back here. Suddenly there's more evidence. Government Exhibit 3, they don't even mention it in their brief, much less I've mentioned it in front of the jury. I mean, let's go by the arguments that were made here. Mr. Crusoe, I'm going to keep you to your time. We have your briefs and I thank you for your arguments. Thank you. It's been a very interesting, unique experience on the phone. Glad to have you both arguing.